UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/6/2020

---

NOLAN HAWTHORNE, an infant by his natural
parent and legal guardian, KEITH HAWTHORNE,
and KEITH HAWTHORNE, individually,

                    Plaintiff,

          -against-

COUNTY OF THE PUTNAM, PUTNAM
COUNTY SHERIFF'S OFFICE, PUTNAM
COUNTY SHERIFF ROBERT LANGLEY,
DEPUTY EDWARD KENNEDY, and DEPUTY
CHRISTOPHER TOMPKINS,

                    Defendants.

---

19-cv-742 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Keith Hawthorne[1] ("Plaintiff"), proceeding *pro se*, commenced this action on

January 24, 2019, pursuant to 42 U.S.C. § 1983 ("§ 1983" or "Section 1983").  (ECF No. 2.)

Plaintiff asserts claims against the County of Putnam ("Putnam County"), Putnam County Sheriff

Robert Langley ("Sheriff Langley"), Deputy Edward Kennedy ("Deputy Kennedy"), and Deputy

Christopher Tompkins ("Deputy Tompkins," and together with Putnam County, Sheriff Langley,

and Deputy Kennedy, "Defendants"[2]), alleging violations of his rights under the First, Fourth, and

Fifth Amendments of the United States Constitution, and under Article I, Sections 8, 9, 11, and 12

of the New York State Constitution.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants have moved to dismiss

---

[1] All claims asserted on behalf of Plaintiff N.H., an infant by his natural parent and legal guardian, Keith Hawthorne, were dismissed without prejudice by the Court's Order dated May 6, 2019, as Plaintiff cannot represent his child without counsel.  (ECF No. 6.)

[2] All claims against Defendant Putnam County Sheriff's Office were dismissed by the Court's Order dated May 6, 2019, because such Defendant lacks capacity to be sued.  (ECF No. 6.)

the Complaint.  (ECF No. 18.)  Plaintiff opposes the motion.  For the following reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and his opposition to the instant motion to dismiss[3] and are accepted as true for the purposes of this motion.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

On or about November 1, 2018, at approximately 6:36 p.m., Deputy Kennedy stopped Plaintiff's vehicle on Secor Road in Mahopac, New York, for failing to stop at a stop sign about three-quarters of a mile from the traffic stop.  (Compl. (ECF No. 2) ¶ 8; Pl.'s Opp. to Defs.' Mot. to Dismiss ("Pl. Opp.") (ECF No. 21) ¶ 5.)  Plaintiff denied the allegation.  (Pl. Opp. ¶ 5.)  Deputy Kennedy asked for and was provided the vehicle operator's license and registration.  (Compl. ¶ 9.) Plaintiff does not state in the Complaint who the vehicle operator was at the time of the incident, but it is assumed based on Plaintiff's other submissions that he was in the driver's seat.  (*See* Pl. Opp. ¶¶ 5–6 (describing Plaintiff lowering the driver's side window and stating that Plaintiff was dropping his child off at school at the time of the incident).)

According to Plaintiff, Deputy Kennedy proceeded to ask where Plaintiff was going, "whether [P]laintiff had anything illegal in the car" and whether "Plaintiff had any legal issues he should know about."  (*Id.* ¶ 6.)  Plaintiff responded that he was going to his child's school and did not have anything illegal in the car, but then declined to answer further questions.  (*Id.*; Compl. ¶

---

[3] When a plaintiff proceeds *pro se*, a court "may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint."  *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).  For purposes of this motion, the Court accepts as true the factual allegations in the complaint and the opposition papers, to the extent they are consistent, and draws all reasonable inferences in the plaintiff's favor.  *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

9.)  Deputy Kennedy allegedly "became agitated" and told Plaintiff that "he asks everyone these questions and [Plaintiff] should just answer," but Plaintiff still declined to respond.  (Pl. Opp. ¶ 7.) Deputy Kennedy then returned to his patrol vehicle for several minutes.  (Compl. ¶ 10.) Meanwhile, Deputy Tompkins arrived at the scene in another patrol vehicle and pulled behind Plaintiff's vehicle along the shoulder of the road.  (*Id.*)

Eventually, Deputy Kennedy returned to Keith's vehicle and ordered Plaintiff and his child to exit "under threat of violence," informing Plaintiff that the vehicle was going to be towed and impounded because the vehicle's inspection expired on the previous day, October 31, 2018.  (*Id.* ¶ 11; Pl. Opp. ¶¶ 7–8.)  Plaintiff objected and was told by Deputy Kennedy that "sometimes drivers get to leave and other times not" and that Plaintiff "should have just answered his questions."  (Pl. Opp. ¶ 7.)  Plaintiff avers that the true reason Deputy Kennedy had him exit the vehicle was because he refused to answer questions.  (Compl. ¶ 12.)  Deputy Kennedy then summoned a tow truck and performed an impound "inventory search" of the vehicle over Plaintiff's verbal objections while Deputy Tompkins "stood behind Plaintiff[] in a hostile[,] threatening manner." (*Id.* ¶ 13.)  No seizure inventory form was used and Plaintiff was not given information about the impound or retrieval process.  (Pl. Opp. ¶ 8.)  Defendants found no illegal substances in the vehicle during the search.  (Compl. ¶ 14.)

Deputy Kennedy issued two traffic summonses to Plaintiff for failure to stop at a stop sign and for the expired inspection, both of which were subsequently dismissed.  (*Id.* ¶ 15.)  Plaintiff states he was never arrested or otherwise place into police custody.  (*Id.* ¶ 16.)  However, Plaintiff also states that Deputies Kennedy and Tompkins held him "in custody from about 6:36 p.m. until approximately 7:10 p.m.," and that in so doing they "constructively placed Plaintiff under arrest." (*Id.* ¶¶ 44–45.)  Plaintiff departed the scene in the tow truck and the vehicle was towed directly to

Plaintiff's residence.  (*Id.* ¶ 18.)

Plaintiff states that he maintained "complete custody and control" of the vehicle at all times and did not consent to the inventory search.  (*Id.* ¶¶ 17, 19.)  He avers that the inventory search constituted a pretext to investigate criminal activity without probable cause.  (*Id.* ¶ 20.)  As a result of Defendants' conduct, Plaintiff says he has suffered "extreme and severe emotional distress, pain and injury," in addition to "humiliation and embarrassment."  (*Id.* ¶¶ 22, 28.)  He is allegedly now "terrified" to leave his residence and does so infrequently.  (*Id.* ¶ 24.)

On January 25, 2018, Plaintiff filed a formal complaint against Deputies Kennedy and Tompkins.  (Pl. Opp. ¶ 10.)  After failing to receive a response, Plaintiff wrote to the Putnam County Sheriff's Office (the "Sheriff's Office") on October 16, 2018, to inquire about the results of the investigation and was told it was concluded and "no further information was available."  (*Id.* ¶ 11.)  By letter dated November 20, 2018, Plaintiff sought specific information regarding the Sheriff's Office's alleged policy of using impound inventory searches as pretext to search for evidence and "punish drivers for exercising their Constitutional right against self-incrimination." (*Id.*)  Based on the correspondence submitted by Plaintiff, the November 20, 2018, letter was essentially an appeal of the initial denial of Plaintiff's October 16, 2018, FOIL request.  (*See id.* at 43–49.)  Sheriff Langley responded by letter dated November 27, 2018, that the prior denial was sustained, as the requested records were "personnel records" exempt from disclosure.  (*Id.* at 48–49.)

**LEGAL STANDARD**

**I.**     **Rule 12(b)(6)**

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.  When a motion to dismiss a complaint is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency."  *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  In fact, courts must interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]."  *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted).  Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

II.   **Section 1983**

Under Section 1983, "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution."  *Castilla v. City of New York.*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

### DISCUSSION

I.   **Federal Claims**

Plaintiff asserts that his First, Fourth, and Fifth Amendment rights were violated when Deputies Kennedy and Tompkins impounded and searched his vehicle after Plaintiff refused to answer Deputy Kennedy's questions.  Construed liberally, Plaintiff's federal claims against Defendants sound in false arrest and unlawful search in violation of the Fourth Amendment, violation of Plaintiff's right against self-incrimination under the Fifth Amendment, retaliation in violation of the First Amendment, and due process violations under the Fourteenth Amendment. The Court considers the sufficiency of each claim in turn.

a. **Municipal Liability**

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality, or private

actor engaged in governmental action, may not be held liable under Section 1983 on

a *respondeat superior* theory solely because the municipality employs a tortfeasor. *Monell*, 436

U.S. at 691. Therefore, under *Monell*, a plaintiff must demonstrate "that the municipality itself

caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*,

361 F.3d 113, 125 (2d Cir. 2004). This generally requires a plaintiff to establish that "(1) an

official custom or policy [ ] (2) subjected [him or her] to (3) a denial of a constitutional

right." *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also Roe v. City of*

*Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a municipality

under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions

taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4)

damages; and (5) that an official policy of the municipality caused the constitutional injury.").

To establish an official custom or policy, a plaintiff must allege

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that
> caused the particular deprivation in question; (3) a practice so consistent and
> widespread that, although not expressly authorized, constitutes a custom or usage
> of which a supervising policy-maker must have been aware; or (4) a failure by
> policymakers to provide adequate training or supervision to subordinates to such
> an extent that it amounts to deliberate indifference to the rights of those who come
> into contact with the municipal employees.

*White v. Westchester Cty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec.

21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

If a plaintiff premises *Monell* liability on an unofficial policy or custom, the practice,

custom, or usage must be so widespread and so persistent that it has the force of law. *Goode v.*

*Westchester Cty.*, No. 18-cv-2963 (NSR), 2019 WL 2250278, at *3 (S.D.N.Y. May 24, 2019).

Alternatively, where municipal liability is based on a failure to train employees, the inadequate training must "reflect[ ] deliberate indifference to ... constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).  To prove deliberate indifference, a plaintiff must properly plead (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

Plaintiff asserts in his Complaint that the constitutional violations allegedly committed by Deputies Kennedy and Tompkins were "directly and proximately caused by policies, practices, and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant City of New York [sic]," including failures to train, supervise, and discipline its officers and agents, and to properly investigate charges of police misconduct made by citizens.  (Compl. ¶ 25.)  Plaintiff further claims that Defendant Putnam County "developed, implemented, enforced, encouraged and sanctioned a *de facto* policy, practice and/or custom of interfering with and/or arresting, without reasonable suspicion or probable cause, individuals who exercise their rights under the First, Fourth, Fifth, and Fourteenth Amendments."  (*Id.* ¶ 26.)  Finally, in his opposition, Plaintiff claims that nonparty "Sergeant Lombardo," a member of the Putnam County Sheriff's Office, told him that deputies conduct "such traffic stops, interrogations, and inventory searches all the time."  (Pl. Opp. ¶ 12.)

Merely asserting, in the absence of factual allegations in support, that a municipal entity

has a custom or policy that denies a plaintiff a constitutional right is insufficient to establish a plausible claim. *See Batista v. Rodriguez*, 702 F.2d 393, 397, 399 (2d Cir. 1983). Furthermore, Sergeant Lombardo's comment is not, contrary to Plaintiff's arguments, an admission that Putnam County has a policy of engaging in unconstitutional practices. Indeed, traffic stops, interrogations, and inventory searches are routine activities of policing, and it is not at all newsworthy that such activities take place frequently.

In sum, no allegations in the Complaint suggest that Putnam County had a tangible custom or policy that deprived Plaintiff of any constitutional rights. Accordingly, Plaintiff's §1983 claims against Putnam County are dismissed.

### b. <u>Individual Liability</u>

In general, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he [or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013). Personal involvement of a defendant may be shown by evidence of any of the following factors (the "*Colon* factors"):

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference … by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[4]

Notably, "mere 'knowledge and acquiescence'" to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim under Section 1983.  *See Faulk v. N.Y.C. Dep't of Cor.*, No. 08-CV-1668(LGS), 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement.").

Here, Plaintiff has failed to establish the personal involvement of Sheriff Langley in the alleged constitutional violations.  Plaintiff has failed to adequately show that Sheriff Langley: (1) participated directly in the alleged constitutional violation, (2) created a policy or custom under which constitutional practices occurred, or allowed the continuance of such a policy or custom, (3) was grossly negligent in supervising subordinates who committed the wrongful acts, or (4) exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring.  Moreover, though Plaintiff states he wrote about the alleged violation to Sheriff Langley after the fact, an allegation that an official ignored a written protest or request is insufficient to establish personal involvement.  *See Platt v. Incorporated Village of Southampton*, 391 F. App'x 62, 65 (2d Cir. 2010) (holding that allegations that a supervisor ignored a letter protesting unconstitutional conduct was insufficient to establish that the supervisor was personally involved); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014) ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain

---

[4] Although there is a split in authority, "[t]he majority of the district courts [in this circuit] ... have held that, absent any contrary directive from the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 7, 2017) (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)) (collecting cases).  This Court has already expressed its agreement with this proposition and, given that it will ultimately dismiss Plaintiff's equal protection claim, the Court will apply it with equal force here.  *See Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *11 (S.D.N.Y. Mar. 31, 2018); *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018).

of command' (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct." (citations omitted)); *Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege that the defendants were "present" for, "participated directly" in, or "somehow permitted" the alleged violation); *Webster v. Fischer*, 694 F. Supp. 2d 163, 179 (N.D.N.Y. 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.").

Consequently, Plaintiff's § 1983 claims against Sheriff Langley are dismissed.

### c.   Fourth Amendment False Arrest/ Unlawful Detention Claims

"A [§] 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (internal quotation marks omitted). "Under New York law, a false arrest claim requires a plaintiff to show that the defendant intentionally confined h[er] without h[er] consent and without justification." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (internal quotation marks omitted); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) ("Under New York law, an action for false arrest requires that the plaintiff show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." (internal quotation marks omitted)). "A confinement is privileged where the arresting officer has probable cause to arrest." *Shaheed v. City of New York*, 287 F. Supp. 3d 438, 448 (S.D.N.Y. 2018) (citing *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003)). Thus, the existence of probable cause to arrest constitutes a "complete defense" to an action for false arrest, whether that action is brought under

Section 1983 or state law.  *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010).  "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

Police stops such as the traffic stop at the center of this case fall into two categories: arrests and so-called *Terry* stops.  *See Grice v. McVeigh*, 873 F.3d 162, 166–67 (2d Cir. 2017). Importantly, "[a]rrests require probable cause, while a police officer may make a *Terry* stop 'as long as the officer has reasonable suspicion that the person to be detained is committing or has committed a criminal offense.'"  *Id.* at 167 (quoting *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016)).  "The standard for reasonable suspicion is 'not high,' and is less than what probable cause requires."  *Id.* (quoting *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (internal citation omitted)).  Courts tasked with determining the existence of reasonable suspicion must weigh the totality of the circumstances as they would appear through the eyes of a reasonable and cautious police officer, guided by his experience and training.  *United States v. Singletary*, 798 F.3d 55, 60 (2d Cir. 2015).

The test for determining whether a *Terry* stop is taking place "is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436 (1991).  A *Terry* stop requiring reasonable suspicion may ripen into a *de facto* arrest requiring probable cause "if the means of detention are 'more intrusive than necessary.'"  *United States v. Tehrani*, 49 F.3d 54, 61 (2d Cir. 1995) (quoting *United States v. Perea*, 986 F.2d 633, 644 (2d Cir. 1993)).  To determine whether an investigatory stop rises to the level of an arrest, courts in this Circuit consider the "amount of

force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used." *United States v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004) (quoting *Perea*, 986 F.2d at 645).

### i.   Initial Traffic Stop

Defendants argue that Deputy Kennedy had, at the very least, reasonable suspicion to justify a *Terry* stop. According to the Complaint, Deputy Kennedy initiated a traffic stop because Plaintiff "allegedly" failed to stop at a stop sign. (Compl. ¶ 8.) It is well-settled in this Circuit that a traffic stop based on a reasonable suspicion of a traffic violation comports with the Fourth Amendment. *See United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009).

While Plaintiff alleges for the first time in his opposition that he denied Deputy Kennedy's allegation, he does not go so far as to accuse Deputy Kennedy of falsifying the allegation in order to create pretext for a traffic stop. Instead, Plaintiff contends that "[w]hether [D]efendants acted reasonably in deciding to stop [P]laintiff's vehicle is unresolved since the two tickets [D]efendants issued to justify the stop were dismissed." (Pl. Opp. ¶ 38.) However, the fact that the tickets were dismissed without prejudice due to the state's failure to provide a supporting deposition in a timely fashion, and not on the merits, (Pl. Opp. 20–21), does not automatically give rise to a Fourth Amendment claim. Nor does it equate in itself to a plausible allegation that Deputy Kennedy lacked reasonable suspicion to justify a *Terry* stop. This is particularly so in light of Plaintiff's numerous references to the initial stop in the Complaint without ever challenging its reasonableness, in contrast to his allegations with regard to Deputy Kennedy's actions following the stop. (*See, e.g.*, Compl. ¶¶ 30–34 (alleging that Defendants

"lacked probable cause" to order Plaintiff from his vehicle, detain him during the traffic stop, "interrogate" him, and seize and search his vehicle, but stating with respect to the initial stop only that "Deputy Kennedy stopped Plaintiff for an alleged routine traffic violation"); *id.* ¶¶ 44–48 (alleging that Defendants "lacked probable cause" to arrest Plaintiff and detained him for an "unreasonable amount of time," but making no claim with regard to the propriety of the initial stop).)

Since Plaintiff repeatedly states in the Complaint that Deputy Kennedy initially stopped him for a "routine traffic violation," (Compl. ¶¶ 8, 30, 92), and has declined to assert facts expressly challenging that version of events, Plaintiff's unlawful detention claim is dismissed to the extent it arises out of the initial traffic stop.

### ii.   Extension of Traffic Stop

"A *Terry* stop initially justified by reasonable suspicion may still violate the Fourth Amendment if it is extended unreasonably." *United States v. Compton*, 830 F.3d 55, 64 (2d Cir. 2016). This is because "[i]f an investigative stop based on reasonable suspicion continues too long ..., it will ripen into a *de facto* arrest that must be based on probable cause." *United States v. Glover*, 957 F.2d 1004, 1011 (2d Cir. 1992). While there is "no rigid time limitation on Terry stops," *United States v. Sharpe*, 470 U.S. 675, 685 (1985), "the detention can continue only for the period of time necessary to either verify or dispel the suspicion," *United States v. Watson*, 787 F.3d 101, 105 (2d Cir. 2015) (internal quotation marks and alteration omitted).

Similarly, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop" and to "attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citations omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction

are—or reasonably should have been—completed." *Id.* (citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985) (in determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation"). "Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop[,]" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355. Unrelated inquiries, while permissible, violate the Fourth Amendment where they prolong or add time to a traffic stop absent reasonable suspicion of a separate crime. *Id.* at 354-55; *see United States v. Gomez*, 877 F.3d 76, 90 (2d Cir. 2017); *see also United States v. Drayton*, 536 U.S. 194, 201 (2002) ("Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means.").

Defendants contend that Deputy Kennedy's decision to extend the traffic stop was appropriate given Deputy Kennedy's observation during the stop that Plaintiff's inspection sticker was expired. Plaintiff admits that the inspection expired the day before the traffic stop. [5] (Compl. ¶ 11.) Plaintiff does state that Deputy Kennedy asked him questions unrelated to his initial traffic infraction during the traffic stop. (*See* Pl. Opp. ¶ 6.) However, Plaintiff states that he was questioned as Deputy Kennedy was making the ordinary inquiries incident to a traffic stop, (*see id.* (questions posed when Deputy Kennedy asked Plaintiff for his license and registration and advised him why he was stopped)), prior to being issued a ticket for his original

---

[5] As he does in discussing the basis for the initial traffic stop, Plaintiff includes language in his opposition to suggest that the presence of an expired inspection sticker on his vehicle is "unresolved," given the dismissal of the traffic ticket related to that allegation. (Pl. Opp. ¶ 38; *see also* Pl. Opp. ¶ 7 (stating that Deputy Kennedy "claimed" the inspection sticker expired the previous day).) However, Plaintiff makes no factual statement refuting the characterization of the inspection sticker included in the Complaint.

infraction.  Plaintiff has not alleged that the unrelated line of questioning prolonged his detention.  Further, it appears on the facts alleged that Deputy Kennedy had, at minimum, reasonable suspicion of a second traffic violation upon viewing the expired inspection sticker on Plaintiff's vehicle.  (*See id.* ¶ 7 (stating Deputy Kennedy told Plaintiff his vehicle was going to be impounded because Plaintiff's inspection sticker had expired).)

      Of course, Deputy Kennedy's reasonable suspicion of a second traffic violation did not operate to extend the time allowed a lawful traffic stop indefinitely, or to sanction the investigation of other potential crimes for which no reasonable suspicion existed.  Upon discovery of the expired inspection sticker, Deputy Kennedy was still obligated to complete the traffic stop within the amount of time reasonably required to complete all tasks related to the infraction.  Plaintiff's position is that these tasks did not include impounding his vehicle.

      In his opposition, Plaintiff claims that the decision to impound his vehicle was unreasonable because Defendants' written procedures "allow impoundment of vehicles only in certain very limited[,] specific situations."  (Pl. Opp. ¶ 34.)  Plaintiff cites to the Supreme Court's decision in *Colorado v. Bertine* for the proposition that police officers may exercise their discretion in deciding whether to impound a vehicle, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." 479 U.S. 367, 375 (1987).  However, the Second Circuit, taking up the question of what *Bertine* requires, has explicitly rejected the requirement that an officer's decision to impound a vehicle as part of his role as community caretaker be guided by a standardized procedure.  *United States v. Lyle*, 919 F.3d 716, 731 (2d Cir. 2019).  Instead, "whether a decision to impound is reasonable under the Fourth Amendment is based on all the facts and circumstances of a given case."  *Id.* (quoting *United States v. Coccia*, 446 F.3d 233,

239 (1st Cir. 2006)) (quotation marks omitted).  While an officer's adherence to standardized criteria plays a role in this analysis, it is not the final question in the matter.  *Id.* (noting that "the existence of and an officer's adherence to a standardized criteria may be helpful in evaluating the reasonableness of an impoundment).

    With the foregoing in mind, the Court considers whether the totality of the circumstances indicate that Plaintiff has plausibly alleged that the impoundment of his vehicle violated the Fourth Amendment.

    Under New York law, motor vehicles must be inspected once each year for safety, N.Y. VTL § 301(a), and "no motor vehicle shall be operated or parked on the public highways of this state unless a certificate or certificates of inspection … is or are displayed upon the vehicle or affixed to the registration certificate for the vehicle," *id.* § 306(b).  Accordingly, Plaintiff had no legal right to continue to operate his vehicle after Deputy Kennedy's discovery that his inspection sticker had expired.

    Deputy Kennedy was not required to impound Plaintiff's vehicle under New York law, which provides for a fine of $50 where an inspection sticker is expired by under 60 days.  *See id.* However, the Court rejects Plaintiff's suggestion that impounding a vehicle displaying an inspection sticker expired by one day is categorically unreasonable.  Vehicle inspections cover mechanisms and equipment deemed "necessary for proper and safe operations" of motor vehicles, including brakes, steering mechanism, wheel alignment, lights, tire pressure, and safety belts.  *Id.* § 301.  Thus, the requirement of a valid inspection sticker is tied directly to the public interest in ensuring the safe operation of motor vehicles.  It is not merely a bureaucratic requirement that must be excused by law enforcement, as Plaintiff suggests, (*see* Pl. Opp. ¶ 33

(arguing that because the state statute provides for a fine, Deputy Kennedy had no authority to impound Plaintiff's vehicle for having an expired inspection sticker)).

A vehicle without a valid inspection sticker poses a realistic threat to public safety. Impounding such vehicles is not dissimilar to "removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety," all of which Plaintiff concedes are sufficient bases for impoundment.  (Pl. Opp. ¶ 22.)  *See South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976) (describing as "beyond challenge" the authority of police "to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience").  If an improperly parked car is a sufficient danger to the community to justify its removal, it can hardly be said that a car whose brakes have not been inspected as required by statute is not.

Notwithstanding the foregoing, Plaintiff argues that Deputy Kennedy's decision to impound his vehicle was motivated by his desire to pursue an unrelated investigation.  However, even assuming that Plaintiff's allegations in this regard are true, as the Court must on a motion to dismiss, Plaintiff fails to dispute that his car lacked a valid inspection sticker.  As the Court has explained, the presence of the expired sticker provided an objectively reasonable basis for impoundment.  Thus, even if Deputy Kennedy acted in part based on improper motives, Plaintiff does not plausibly allege he exercised his discretion to impound "solely for the purpose of investigation." *Lyle*, 919 F.3d at 731; *see Vasquez v. Yadali*, No. 16-cv-895 (NSR), 2020 WL 1082786, at *8 (S.D.N.Y. March 5, 2020) (impoundment was proper where plaintiff failed to allege "any facts negating an inference that his vehicle posed a threat to public safety") (citation

omitted).  Accordingly, the Court finds under the facts alleged that Deputy Kennedy's decision to impound Plaintiff's vehicle was reasonable and did not violate the Fourth Amendment.

Since Plaintiff alleges the traffic stop lasted only as long as necessary to complete all activities related to his traffic infractions, he fails to state a claim for false arrest or unlawful detention.  This determination is not altered by Plaintiff's contention that his traffic stop rose to a "constructive arrest" based on the approximately 34 minutes he was kept at the scene, (Compl. ¶¶ 44–45.)  The Court does not find that that was an unreasonable interval to detain Plaintiff while Deputy Kennedy awaited the arrival of a tow truck.  *See Grice v. McVeigh*, 873 F.3d 162, 168 (2d Cir. 2017) (*Terry* stop did not ripen into a *de facto* arrest where individual was placed in handcuffs for a period of 33 minutes while officers and dogs searched for a potential bomb); *Tehrani*, 49 F.3d at 61 ("We decline to hold that a thirty minute detention based on reasonable suspicion is, *per se*, too long.").  That Plaintiff was not placed under "constructive arrest" is further supported by the lack of any allegation that Deputy Kennedy used force against Plaintiff or physically restrained him.

Even if the Court were unable to determine that the warrantless seizure of Plaintiff's vehicle was reasonable as a matter of law, and that the traffic stop was reasonably extended, Defendants would be entitled to qualified immunity for their actions.  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).  Applying this test here, the Court concludes that Defendants' conduct did not violate a clearly established law.  Indeed, as one court has explained, "[n]either the Supreme Court nor the

Second Circuit has definitively addressed the issue as to whether and under what circumstances vehicle impoundments for traffic infractions violate the Fourth Amendment." *Barnes v. City of New York*, No. 13-CV-7283 (GBD)(JLC), 2015 WL 4076007, at *10 (S.D.N.Y. July 2, 2015), adopted by, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015).

But even if the law was clearly established, Defendants would still be entitled to qualified immunity.  If Defendants believed that the expired inspection sticker on Plaintiff's vehicle violated VTL § 301(a) and posed a threat to public safety, it would not "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *See Garcia*, 779 F.3d at 92 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also Barnes*, 2015 WL 4076007 at *10 (concluding that defendant's belief that he was authorized under the VTL to remove a car that was in violation of Section 402(1)(a) of the VTL would "fall[ ] within the zone of 'reasonable but mistaken judgments' entitled to [qualified immunity]").

In short, since Defendants acted pursuant to their community care functions and their conduct is otherwise protected under qualified immunity, Plaintiff's false arrest/unlawful seizure claim fails insofar as it arises out of the impoundment of his vehicle.

### iii.    Issuance of Traffic Tickets

With respect to the two tickets issued to Plaintiff, the Second Circuit has stated that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."  *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010).  Consistent with this holding, other courts in this Circuit have found that the issuance of a traffic ticket alone does not give rise to a false arrest claim under Section 1983.  *See LoSardo v. Ribaudo*, No. 14-CV-6710(JS)(GRB), 2015 WL 502077, at *5 (E.D.N.Y. Feb. 5, 2015) ("Courts … have repeatedly held that the issuance of a traffic ticket or court

summons alone does not constitute a seizure under the Fourth Amendment for the purposes of establishing a false arrest … claim."); *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 228 (E.D.N.Y. 2010) *on reconsideration in part*, 814 F.Supp.2d 242 (E.D.N.Y. 2011) ("'No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes.  To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim.'" (quoting *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008)).

Accordingly, Plaintiff does not state a Fourth Amendment claim arising out of the two tickets Defendants issued to him.

### d.  Fourth Amendment Unreasonable Search Claim

The Court has determined that Deputy Kennedy's decision to impound Plaintiff's vehicle was a lawful exercise of his reasonable discretion and did not violate the Fourth Amendment. Nonetheless, the Second Circuit has observed that some courts "have concluded that there are two inquiries: first, whether the impoundment of a car is reasonable; and second, if so, whether the subsequent search of the car after the impoundment is reasonable." *Lyle*, 919 F.3d at 730 n.2 (citing *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996) ("[T]he decision to impound (the 'seizure') is properly analyzed as distinct from the decision to inventory (the 'search').."); *United States v. Coccia*, 446 F.3d 233, 237 n.5 (1st Cir. 2006) (same)).  The Second Circuit in *Lyle* found it did not need to reach the second inquiry, since the plaintiff in that case did not challenge the search of his vehicle.  Here, however, the Complaint challenges both the decision

to impound and the subsequent inventory search.  Accordingly, the Court must determine

whether the inventory search complied with the limiting principles of the Fourth Amendment.

    The Supreme Court has recognized that when police "take a vehicle into custody, they

may search the vehicle and make an inventory of its contents without need for a search warrant

and without regard to whether there is probable cause to suspect that the vehicle contains

contraband or evidence of criminal conduct." *United States v. Lopez*, 547 F.3d 364, 369 (2d Cir.

2008) (citing *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983)).  So-called "inventory searches" are

exempt from probable cause and warrant requirements "because they are conducted by the

government as part of a community caretaking function" that police must perform separate and

apart from their responsibility to detect crime.  *Bertine*, 479 U.S. at 381 (internal quotation

marks omitted); *Lopez*, 547 F.3d at 369.  The Second Circuit has described the objectives

of inventory searches as "(1) to protect the owner's property while it is in police custody; (2) to

protect the police against spurious claims of lost or stolen property; and (3) to protect the police

from potential danger."  *Lopez*, 547 F.3d at 369.  "The service of these objectives is wholly

independent of whether the contents of the car figure in any way in a criminal investigation or

prosecution."  *Id.* at 369–70.

    Courts in this Circuit have noted that an officer's subjective motivations in performing an

inventory search generally will not invalidate an otherwise-reasonable search.  *See United States

v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008).  However, as the Second Circuit recently opined, the

Supreme Court "in *dicta* has suggested that the inventory search doctrine may be a rare example

in which an officer's improper motive can invalidate 'objectively justifiable behavior under the

Fourth Amendment.'"  *United States v. Williams*, 930 F.3d 44, 56 (2d Cir. 2019) (quoting

*Kentucky v. King*, 563 U.S. 452, 464 (2011) (quoting *Whren v. United States*, 517 U.S. 806, 812

(1996))).  For example, in *Bertine*, the Supreme Court affirmed that inventory searches are reasonable for Fourth Amendment purposes when "administered in good faith," "according to standard criteria and on the basis of something *other than suspicion of evidence of criminal activity*."  479 U.S. 374–75 (1987) (emphasis added).

Construing the facts alleged in the light most favorable to *pro se* Plaintiff, Plaintiff plausibly alleges that Deputy Kennedy's inventory search of his vehicle was motivated solely by his desire to pursue an unrelated criminal investigation.  Specifically, Plaintiff states that Deputy Kennedy initially asked him whether he had "anything illegal" in his vehicle and whether he had any "legal issues" Deputy Kennedy "should know about."  (Pl. Opp. ¶ 6.)  Deputy Kennedy allegedly became "agitated" when Plaintiff refused to answer his questions.  (*Id.* ¶ 7.)  When Deputy Kennedy announced Plaintiff's vehicle would be impounded based on the expired inspection sticker, he told Plaintiff he "should have just answered [Deputy Kennedy's] questions."  (*Id.*)  Deputy Kennedy then performed an inventory search of Plaintiff's vehicle, but did not complete an inventory form.  (*Id.* ¶ 8.)  After issuing Plaintiff two traffic violation tickets, Plaintiff's car was never taken into police custody and was instead towed directly back to his residence.  (Compl. ¶ 18.)  Deputy Kennedy was not acting with the objective of protecting Plaintiff's property while it was in police custody or to protect himself from claims of lost property, since he never took the vehicle into custody and instead sent it directly home with Plaintiff.  Nor, on the facts alleged, was Deputy Kennedy acting to protect himself from potential danger.

It is well-established that Plaintiff has a right to be free from inventory searches that are not administered in good faith and on the basis of something other than suspicion of criminal activity.  *See Bertine*, 479 U.S. at 374–75.  If, as Plaintiff has alleged, Deputy Kennedy

conducted the inventory search solely for the purpose of investigating criminal conduct, without cause to believe Plaintiff was involved in any such conduct, then Deputy Kennedy acted in violation of that well-established right.  Moreover, drawing all inferences in Plaintiff's favor, the Court cannot conclude that a reasonable officer in Deputy Kennedy's position would have mistakenly believed his conduct to be lawful.  Thus, Deputies Kennedy and Tompkins are not entitled to qualified immunity at this juncture.

In light of the foregoing, Plaintiff states a claim under the Fourth Amendment sounding in unlawful search against Deputy Kennedy and Deputy Tompkins.

### e.  **Fifth Amendment Self-Incrimination Claim**

The Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that a person shall not be "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.

Plaintiff does not allege that he made any incriminating statements.  Nor does he allege that Defendants ever used, sought to use, or could have used any incriminating statement against him in a criminal proceeding.  Accordingly, Plaintiff has failed to sufficiently allege a violation of his rights under the Fifth Amendment.  *See Chavez v. Martinez*, 538 U.S. 760, 766–767 (2003) ("mere coercion [to self-incriminate] does not violate the text of the Self–Incrimination Clause absent use of the compelled statements in a criminal case"); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) ("The remedy for a violation of the right against self–incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.'") (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (per curiam)).

**f.   First Amendment Retaliation Claim**

To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury.  *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  A plaintiff may plead injury either by showing that his speech has been adversely affected by government retaliation or that he has suffered some other concrete, non-speech related harm.  *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (noting that a loss of a government contract, additional scrutiny at border crossings, revocation of building permits, and refusal to enforce zoning laws are all adequate cognizable harms even in the absence of a chilling effect).

Assuming, without deciding, that the First Amendment protects a plaintiff's right to refuse to answer an officer's questions during a traffic stop, Plaintiff nonetheless fails to state a plausible retaliation claim.  Plaintiff has not shown that Defendants' actions in stopping and impounding his vehicle, and issuing Plaintiff tickets, were motivated or substantially caused by exercise of his First Amendment right where, as the Court has decided, Defendants' actions in this regard were objectively reasonable given the existence of probable cause to believe Plaintiff had committed traffic infractions.  *Cf. Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government."); *Lederman v. Benepe*, No. 12 Civ. 6028(PGG), 2014 W L 1318356, at *9 (S.D.N.Y. March 28, 2014) ("Where there is probable cause to believe that a

plaintiff has committed a crime, ... the case law indicates that First Amendment interests must yield, and that an inquiry into the motive for making an arrest is not necessary.")

Moreover, to the extent Plaintiff claims the inventory search was retaliatory, the only injury he claims is emotional.[6] "It is an unsettled question in this Circuit whether … emotional damages are sufficient, standing alone, to give rise to a First Amendment retaliation claim." *Doe v. City of New York*, No. 18-cv-670 (ARR) (JO), 2018 WL 3824133, *13 (E.D.N.Y. Aug. 9, 2018); *see Zherka v. Amicone*, 634 F.3d 642, 646-47 (2d Cir. 2011) (declining to "decide if allegations of emotional and psychological harm would establish compensable injury in a First Amendment retaliation claim"). However, it is at the very least settled that "[h]urt feelings or a bruised ego are not by themselves the stuff of constitutional tort." *Zherka*, 634 F.3d at 645-46 (citing *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). While Plaintiff states in conclusory terms that he suffered "extreme and severe emotional distress, pain and injury," in addition to "humiliation and embarrassment," (Compl. ¶¶ 22, 28), due to the impoundment and search of his vehicle, the Court does not find that such allegations establish a compensable injury under the First Amendment. *See Zherka*, 634 F.3d at 646-47 (finding that the plaintiff's allegations of emotional and psychological harm, which were pled "in a most cursory fashion," were insufficient even to satisfy the more lenient facial plausibility standard applicable to a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure); *LaVertu v. Town of Huntington*, No. CV 13–4378(SJF)(WDW), 2014 WL 2475566, at *7 (E.D.N.Y. April 4, 2014) (allegations that plaintiff felt "personally attacked" and was issued unwarranted summonses too *de minimis* in terms of harm for First Amendment retaliation purposes).

---

[6] Plaintiff pleads no other injury arising from the alleged unreasonable search, stating that his car or other belongings were never taken from him, he was not placed under arrest, and he was permitted to accompany his vehicle back to his residence.

Finally, even if the Court were to find that Plaintiff pleaded a sufficient retaliation claim, Defendants would be entitled to qualified immunity because "it was not clearly established that an individual has a First Amendment right to refuse to answer an officer's questions during a *Terry* stop." *Koch v. City of Del City*, 660 F.3d 1228, 1244 (10th Cir. 2011); *see Alexander v. City of Round Rock*, 854 F.3d 298, 308–09 (5th Cir. 2017) ("Surprisingly few courts have ruled on this precise issue. … . The sparse case law that does exist, however, indicates no consensus that a defendant has a First Amendment right not to answer an officer's questions during a stop like the one at issue here."); *United States v. Sindel*, 53 F.3d 874, 878 (8th Cir. 1995) ("Plaintiffs contend that they can state such a First Amendment retaliation claim because Defendants retaliated against them for exercising their right not to speak.... However, this right not to speak has been limited to the context of government-compelled speech with respect to a particular political or ideological message.").  The Court therefore concludes that Defendants are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

### g.  Fourteenth Amendment Due Process Claim

Though Plaintiff does not clearly explain the basis for his Fourteenth Amendment claims, the Court infers that they are based on alleged deprivations of substantive due process related to his false arrest and unlawful search and seizure claims, and deprivations of procedural dure process related to the alleged impoundment of his vehicle.

The Court turns first to Plaintiff's substantive due process claims.  In general, where "'a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'"  *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994));

*see also Harris v. City of New York*, No. 16-CV-1214 (PKC)(JO), 2018 WL 4471631, at *10 n.17 (S.D.N.Y. Sept. 18, 2018) ("To the extent that Plaintiff attempts to assert a separate substantive 'due process' deprivation of liberty claim based on the same conduct that underlies her Fourth Amendment claims for false arrest or unlawful strip search, this claim is dismissed as duplicative.").  Here, as it pertains to Plaintiff's false arrest claims, Plaintiff's substantive due process claims are duplicative of those claims already addressed in this Opinion and Order.  And to the extent Plaintiff intended to state a substantive due process claim related to Defendants' impoundment and inventory search of his car, that claim would likewise be duplicative of Plaintiff's Fourth Amendment claims based on the same conduct.

As to Plaintiff's procedural claims, "[a] claim under Section 1983 for deprivation of procedural due process raises two threshold questions: (1) 'whether the plaintiff possessed a liberty or property interest' and, if so, (2) 'what process was due before the plaintiff could be deprived of that interest.'"  *Colson v. New York Police Dep't*, No. 13-CV-5394 (JG), 2015 WL 64688, at *9 (E.D.N.Y. Jan. 5, 2015).  Here, even if there was a liberty or property interest at stake in the impoundment of his car, Plaintiff has not alleged "the absence or inadequacy of any post-deprivation hearing following the impoundment of his vehicle."  *See Clynch v. Chapman*, 285 F. Supp. 2d 213, 223 (D. Conn. 2003) (explaining that plaintiff, whose car was towed away following his arrest for a DUI, failed to state a "procedural due process claim" where there was no claim about the absence or inadequacy of a post-deprivation hearing).  Indeed, Plaintiff does not even allege that he ever lost custody of his vehicle following the traffic stop; instead, Plaintiff was allowed to accompany the tow truck carrying his car back to his residence.  In any event, to the extent Defendants' conduct did implicate procedural due process concerns, the

Court notes—for the same reasons articulated in its Fourth Amendment analysis—that the Defendants would be protected by qualified immunity.

Accordingly, to the extent Plaintiff asserts substantive or procedural due process claims, the Court grants the Defendants' motion to dismiss those claims.

## II.    State Law Claims

Plaintiff claims that Defendants' alleged conduct violates not only the U.S. Constitution's First, Fourth, Fifth, and Fourteenth Amendments, but also various provision of the New York State Constitution.  *See* N.Y. Const. art. I, § 8 (guaranteeing "liberty of speech"), *id.* art. I, § 9 (guaranteeing "right to assemble and petition"),[7] *id.* art. I, § 11 (guaranteeing "equal protection of the law"); *id.* art. I, § 12 (protecting against "unreasonable searches and seizures").  New York "has no enabling statute" like Section 1983 that "permit[s] damage actions for the deprivation of [state] constitutional rights."  *Brown v. State*, 89 N.Y.2d 172, 186 (1996).  Thus, Plaintiff proceeds directly under "the [New York] Constitution itself."  *Id.*  In doing so, Plaintiff relies on the "narrow remedy" the New York State Constitution offers in certain contexts where "Congress and the [U.S.] Supreme Court" have failed to "provide appropriate protection against official misconduct at the State level."  *Id.* at 192.

"District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under [Section] 1983."  *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (quoting *Campbell v. City of New York*, No. 09 Civ. 3306, 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011)).  "Accordingly, where a complaint alleges no theories of liability that are cognizable exclusively under the New York State Constitution, any claims brought under the state constitution are

---

[7] Plaintiff erroneously cites this provision as protecting him from retaliation.  (Compl. ¶ 82.)

ordinarily dismissed." *Talarico v. Port Auth. of N.Y. and N.J.*, 367 F. Supp. 3d 161, 171 (S.D.N.Y. 2019) (collecting cases).

Plaintiff's state-law claims under those sections of the New York State Constitution that are analogous to the First and Fourth Amendment are duplicative of his §1983 claims.[8] *See People v. P.J. Video*, 68 N.Y.2d 296, 304 (1986) (identifying a "presumption" that the scope of the New York State Constitution's guarantee against unreasonable searches and seizures "conforms with that found in the [Fourth] Amendment" (quoting *People v. Johnson*, 66 N.Y.2d 398, 406 (1985))); *Housing Works, Inc. v. Turner*, 179 F. Supp. 2d 177, 199 n.25 (S.D.N.Y. 2001) ("Free speech claims under the First Amendment and the New York State Constitution are subject to the same standards." (citation omitted)).  Plaintiff makes no argument that his §1983 claims offer him inadequate protection as to rights granted by the New York State Constitution.

However, as the Court has discussed, § 1983 does not permit Plaintiff to assert his claims against Putnam County under a theory of *respondeat superior*, which Plaintiff invokes in his Complaint.  *See Monell*, 436 U.S. at 691–95.  Thus, it cannot provide an adequate alternative remedy for Plaintiff's New York State constitutional claims to the extent they are asserted against Putnam County.  *See Alwan v. City of New York*, 311 F.Supp.3d 570, 587 (E.D.N.Y. 2018); *Brown v. City of New York*, No. 13-CV-6912, 2017 WL 1390678, at *15 (S.D.N.Y. Apr. 17, 2017); *Espinoza v. City of New York*, 194 F.Supp.3d 203, 208 (E.D.N.Y. 2016); *Campbell v. City of New York*, No. 09-CV-3306 (FB), 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011); *Vilkhu v. City of New York*, No. 06-CV-2095 (CPS), 2008 WL 1991099, at *9 (E.D.N.Y. May 5, 2008).

---

[8] To the extent Plaintiff invokes new legal theories under sections 9 and 11 of the New York State Constitution, Plaintiff has pleaded no facts even arguably sufficient to support a plausible claim for either denial of his right to assemble or denial of equal protection.

Of course, this does not mean that all of Plaintiff's constitutional claims under the New York State Constitution can go forward.  For the reasons the Court has discussed, Plaintiff fails to state a claim under the First Amendment, Fifth Amendment, and Fourteenth Amendment. Moreover, Plaintiff does not state a plausible claim sounding in false arrest or unlawful seizure. Plaintiff's only viable claim under the New York State Constitution, as against Putnam County only, arises from his unreasonable search allegations.

Accordingly, the Court dismisses all of Plaintiff's claims under the New York State Constitution with the exception of Plaintiff's *respondeat superior* claim against Putnam County based on Deputies Kennedy and Tompkins' alleged unreasonable inventory search of Plaintiff's vehicle.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED in part and DENIED in part.  Plaintiff's claims against Sheriff Robert Langley and Plaintiff's federal claims against the County of Putnam are dismissed in their entirety.  Plaintiff's claims against Deputy Kennedy and Deputy Tompkins under the First, Fifth, and Fourteenth Amendment, and under the New York State Constitution, are likewise dismissed in their entirety.  Plaintiff's Fourth Amendment claim against Deputy Kennedy and Deputy Tompkins survives to the extent it is based on his allegations of unreasonable search, and it is otherwise dismissed.  Plaintiff's unreasonable search claim under the New York State Constitution survives as against the County of Putnam only, and all claims arising under the New York State Constitution are otherwise dismissed.

Dismissal of all claims is without prejudice.  Plaintiff is granted leave to file an Amended Complaint addressing the deficiencies identified herein by November 10, 2020.  If Plaintiff elects

to file an Amended Complaint, Defendants shall file an answer or otherwise respond by December 10, 2020.  Plaintiff is cautioned that failure to file an Amended Complaint will result in the dismissal with prejudice of those claims dismissed without prejudice herein.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 18.  The Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF and to file proof of service on the docket.

Dated:  October 6, 2020                                  SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge